IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:21CR232 |
| v. | |
| JOSE LEYVA-MARTINEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Jose Leyva-Martinez's ("Leyva-Martinez") *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 147). He "contends his conviction stems from the abrogation of his Sixth Amendment right to the effective assistance of counsel." The government asks the Court to deny Leyva-Martinez's motion (Filing No. 154).

The Court has carefully reviewed Leyva-Martinez's motion, the parties' respective submissions, and the balance of the record in this case and concludes his motion should be denied. Because the record conclusively demonstrates Leyva-Martinez is not entitled to relief, no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255(b); *Feather v. United States*, 18 F.4th 982, 989 (8th Cir. 2021) (deciding an evidentiary hearing was neither required nor necessary to resolve the defendant's § 2255 motion based on the district court's experience with the issues).

I.    BACKGROUND

On August 19, 2021, a grand jury indicted (Filing No. 1) Leyva-Martinez with (1) conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 846, (2) possessing with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and (3) possessing a firearm during a drug-trafficking offense, in

violation of 18 U.S.C. § 924(c)(1)(A). The indictment also included a forfeiture allegation covering a large amount of cash, two guns, three vehicles, and a house. The drug charges each carried a statutory sentencing range of 10 years to life. *See* 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. The gun charged carried a statutory sentencing range of 5 years to life that must run consecutive to any predicate counts. *See* 18 U.S.C. § 924(c)(1)(A)(i).

On August 25, 2021, Leyva-Martinez pleaded not guilty with the assistance of two private attorneys he hired to represent him (Filing Nos. 15 and 16). They both withdrew on April 12, 2022, when attorney Chinedu Igbokwe ("Igbokwe") entered his appearance as retained counsel (Filing Nos. 68-70).

Leyva-Martinez changed his plea on January 6, 2023, (Filing Nos. 99 and 100). Under a written plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Leyva-Martinez pleaded guilty to the conspiracy charge and the gun charge and admitted the forfeiture allegation. In addition to agreeing to dismiss the possession charge at sentencing, the government agreed to a sentencing range of 240 to 300 months on the counts of conviction.

Before accepting Leyva-Martinez's change of plea, the Court engaged him in an extensive plea colloquy to ensure that he knew his constitutional rights and was pleading guilty knowingly, willingly, and voluntarily. The Court spoke with Leyva-Martinez with the help of a Spanish language interpreter.

At the hearing, Leyva-Martinez testified under oath that he had no complaints about Igbokwe's legal representation. He further testified he understood what the government would have to prove to convict him at trial and the severe penalties he faced if convicted. The Court reiterated the statutory minimum and maximum penalties Leyva-Martinez faced for each count and made sure Igbokwe had explained the possible immigration consequences of pleading guilty.

After the government summarized the terms of the plea agreement, including the agreed sentencing range of 240 to 300 months imprisonment, stipulation of removal, and waiver of most rights to appeal and collateral attack, Leyva-Martinez stated he understood the terms of the agreement. The Court again clarified for Leyva-Martinez that the agreed-upon sentencing range was 240 to 300 months, and that where he would fall within that range was a matter of the Court's discretion. The Court found Leyva-Martinez understood "the nature of the charges filed against him and the possible penalties that" could be imposed.

During the hearing, the government recounted the factual basis from the plea agreement. When Leyva-Martinez briefly objected to the assertion that he had supplied his co-defendant one to three pounds of methamphetamine per day, Igbokwe explained that the binding nature of the Rule 11(c)(1)(C) plea agreement made the exact quantity less important. The Court permitted Igbokwe to confer with Leyva-Martinez in confidence off the record. That conference resolved the issue and Leyva-Martinez admitted the factual basis in full and pleaded guilty.

Based on that thorough plea colloquy, the Court found (1) Leyva-Martinez was "competent and capable of entering an informed plea," (2) he was "aware of the nature of the charges and the consequences of his plea," and (3) his guilty plea was "knowing, voluntary, and . . . supported by a factual basis concerning each essential element of" the offenses to which he pleaded guilty. The Court accepted Leyva-Martinez's plea, ordered a presentence investigation report ("PSR"), and took the plea agreement under advisement pending review of the PSR.

At sentencing, the Court reviewed the completed PSR (Filing No. 117), which attributed 163,874 kilograms of converted drug weight ("CDW") to Leyva-Martinez. *See* U.S.S.G. § 2D1.1. That amount was calculated from the 3,541 grams of methamphetamine seized from his home (63,720 kilograms CDW) as well as by converting the $496,990 in

U.S. currency seized into 50.77 kilograms of methamphetamine (100,154 kilograms CDW). Leyva-Martinez did not object to that quantity or anything else in the PSR. Based on that quantity, a two-level increase for importation, and a three-level decrease for acceptance of responsibility, Leyva-Martinez's advisory United States Sentencing Guidelines ("U.S.S.G." or "guidelines") range was 210 to 262 months on the drug charge (level 37, category I) and 60 months consecutive on the gun charge.

At allocution, Leyva-Martinez took responsibility for his crimes and expressed regret. In line with the parties' agreement, Igbokwe asked for a total of 240 months imprisonment based on his evaluation of the relevant 18 U.S.C. § 3553(a) factors. He acknowledged that the requested sentence was a downward variance from Leyva-Martinez's advisory guidelines range but argued Leyva-Martinez's personal circumstances, including his young children and cooperation, warranted that sentence.

In contrast, the government focused on the scale of Leyva-Martinez's conspiracy. Highlighting the "astounding" quantity of drugs involved in the conspiracy in such a short time, the government asked the Court to follow the probation officer's sentencing recommendation of a guideline sentence.

In accordance with that recommendation and the parties' binding plea agreement, *see* Fed. R. Crim. P. 11(c)(1)(C) (making the terms of the plea agreement binding if the Court accepts it), the Court sentenced Leyva-Martinez to 210 months on the drug charge and 60 months consecutive on the gun charge. The sentence was at the bottom of Leyva-Martinez's advisory guidelines range and at the middle of the binding range from the plea agreement. Leyva-Martinez did not appeal.

On October 24, 2023, Leyva-Martinez filed the present motion to vacate, set aside, or correct his sentence, arguing Igbokwe provided ineffective assistance of counsel on multiple grounds. *See Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). The government contends Leyva-Martinez's motion is without merit.

## II. DISCUSSION

### A. Standard of Review

As relevant here, § 2255(a) authorizes a defendant to seek post-conviction relief if his "sentence was imposed in violation of the Constitution or laws of the United States." Section 2255 does not cover every claimed error in a defendant's conviction and sentence, *see Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc), nor is it "a substitute for a direct appeal," *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994).

Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). Leyva-Martinez "bears the burden of showing that he is entitled to relief under § 2255." *Langford v. United States*, 993 F.3d 633, 637 (8th Cir 2021) (quoting *Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018)).

### B. Allegations of Ineffective Assistance of Counsel

As Leyva-Martinez points out, the Sixth Amendment guarantees him "the effective assistance of counsel at" the critical stages of his case. *Lee v. United States*, 582 U.S. 357, 363 (2017); *see also* U.S. Const. amend. VI. Leyva-Martinez contends Igbokwe was unconstitutionally ineffective by (1) grossly misinforming him "of his sentencing exposure in discussing the plea agreement" and failing "to properly advise [him] of the term of imprisonment he could face by accepting the plea bargain," (2) failing to challenge "the specific facts leading to" the search of his house and the drug quantity attributed to him, and (3) failing to advise the Court "that as a deportable defendant" Leyva-Martinez was eligible for a departure or variance under *United States v. Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994). Leyva-Martinez requests that he be resentenced to the 15 years he says Igbokwe promised him was the most he would get under the plea agreement.

To prove his ineffective-assistance claims, Leyva-Martinez must show Igbokwe's "representation 'fell below an objective standard of reasonableness' and that the deficient representation prejudiced the defense." *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). His burden is a heavy one. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). "Failure to establish either prong is fatal to" his claims. *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013).

Counsel's performance is deficient if he "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Collins v. United States*, 28 F.4th 903, 906 (8th Cir. 2022). The Court's review is highly deferential. *See Strickland*, 466 U.S. at 689. In reviewing counsel's performance, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment," *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006), and makes "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689.

To establish prejudice, Leyva-Martinez "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *accord Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (explaining the focus of *Strickland*'s prejudice prong is whether the proceeding was fundamentally unfair). "It is not sufficient for [him] to show that the error had some 'conceivable effect' on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 693).

Here, Leyva-Martinez shows neither deficiency nor prejudice.

1.      **Sentencing Exposure**

First, Leyva-Martinez's "*post hoc* assertion" that Igbokwe misinformed him about his sentencing exposure under the plea agreement and promised him a specific sentence of no more than 15 years is belied by the record. *Lee*, 582 U.S. at 369 (advising courts not to "upset a plea solely because of *post hoc* assertions from a defendant" but to "instead look to contemporaneous evidence to substantiate" the defendant's preferences); *see also United States v. Williams*, 536 F.2d 247, 250 (8th Cir. 1976) (concluding "the district court was not required to conduct an evidentiary hearing on allegations which amounted to no more than a bare contradiction of statements petitioner made when she pled guilty"). Both Leyva-Martinez's signed petition and signed plea agreement explained the statutory minimums and maximums he faced for each count.

More importantly, his written plea agreement expressly stated that his plea agreement with the government set a binding sentencing range of 240 to 300 months imprisonment. A fifteen-year (180-month) sentence is far below that range. The Court covered Leyva-Martinez's sentencing exposure multiple times at the change-of-plea hearing. He unequivocally stated under oath that he understood the sentencing range he agreed to and the Court's discretion to sentence him within that range if it accepted his plea agreement. A "defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Leyva-Martinez does not overcome that barrier.

Leyva-Martinez may now say he pleaded guilty "improvidently," but he is wrong to think the sentence he got is exactly the same as what he could have received if he had gone to trial and lost. At any rate, Leyva-Martinez should not be so quick to try to cast aside his plea agreement. A guilty plea "is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." *Walker v. United States*, 115 F.3d 603, 604 (8th

Cir. 1997) (alteration in original) (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)). That is even more important when those misgivings are not only misguided but could also subject the defendant to additional charges and a much higher sentence. *See id.* (explaining a plea should rarely be set aside when the defendant has knowingly and voluntarily pleaded guilty at a plea hearing).

Any notion that Leyva-Martinez's plea was not knowing and voluntary or that he somehow believed he was guaranteed a sentence of no more than fifteen years in prison is—at best—patently unreasonable under the undisputed facts of this case. *See Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994) (deciding the defendant could not properly "contend that his lawyer told him that he likely would receive a lesser sentence in view of his sworn statement at the plea proceedings that, apart from the plea agreement, there had been no other 'promises or predictions of any kind' that influenced his decision to plead guilty"); *Premachandra v. United States*, 101 F.3d 68, 69 (8th Cir. 1996) (rejecting ineffective-assistance claim based on the defendant's detailed plea colloquy). This ground affords Leyva-Martinez no relief.

### 2. Consent to Search and Poisonous Fruit

Turning to Leyva-Martinez's contention that Igbokwe "was ineffective for not challenging the specific facts leading to" the drug quantity attributed to him and what he sees as the illegal search of his house, the Court again finds his arguments do not withstand scrutiny. Before the search in question, Leyva-Martinez signed a written "Permission for Search – Permiso de Busqueda" form in Spanish, giving the police permission to search his residence. They soon found a large quantity of drugs, guns, and money which affected Leyva-Martinez's sentence.

Leyva-Martinez now contends the police falsely obtained his consent by telling him they had a warrant when they did not and searched his house illegally. As he sees it, the drugs and cash used to calculate the drug quantity attributed to him at sentencing were "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Leaving aside the oddity of Leyva-Martinez's account of the events leading to his consent, his argument still misses its mark. His "*post hoc* assertion[s]" again conflict with his written plea agreement and his sworn testimony in changing his plea. *Lee*, 582 U.S. at 369. Leyva-Martinez admitted to a thorough factual basis that included the statement that he "gave officers permission to search his home." Leyva-Martinez never said anything about his consent being obtained by fraud or that the search was illegal, despite objecting to other information in the factual basis. When the Court asked if he had any complaints about "Igbokwe or his legal representation," he said he did not. If Leyva-Martinez thought Igbokwe should have challenged Leyva-Martinez's written consent and moved to suppress the evidence obtained from his house, he could have said so. He didn't.

To be sure, in his § 2255 motion and brief, Leyva-Martinez complains Igbokwe "should have investigated the purported illegality of the search of his home and officers lying to him about reviewing the warrant documents." But Leyva-Martinez never even alleges he told Igbokwe that his consent was falsely obtained or that he objected to the search, even though he signed the consent form. And there is nothing else in the record to suggest Igbokwe should have investigated that issue further. At this late stage, Leyva-Martinez's "vague and conclusory allegations" of deficiency "are not sufficient to state a ground for relief under 28 U.S.C. § 2255." *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986); *see also Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

As for drug quantity, Leyva-Martinez asserts Igbokwe "was ineffective in failing to challenge drug amount at sentencing as the government failed to establish its burden of proving the drug quantity chargeable to" him by a "preponderance of the evidence." More specifically, he contends "the government lacked sufficient support to hold [him] accountable to any of the number of drugs" mentioned by his co-defendant. That argument falls flat because Leyva-Martinez's sentence was not based in any way on those drugs. As

9

noted above, his advisory guidelines range was based entirely on the CDW of 163,874 kilograms resulting from the drugs and cash seized from his home.

### 3. Departure or Variance as a Deportable Defendant

Leyva-Martinez last argues Igbokwe was ineffective "for not requesting the sentencing court to depart below the range indicated by the Sentencing Guidelines where the defendant[] is a deportable alien and faces the prospect of objectively more severe prison conditions than he would otherwise." The argument is based on the D.C. Circuit's conclusion in *Smith* "that a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence."[1]  27 F.3d at 655.

The Eighth Circuit too has concluded a defendant's "alien status and the collateral consequences flowing therefrom may be an appropriate basis for departure." *United States v. Lopez-Salas*, 266 F.3d 842, 847 (8th Cir. 2001). But such departures are very fact specific and are far from routine. *Id.* at 848-50 (describing such departures as atypical, extraordinary, unusual, and rare). Before departing on those grounds, the Court must "articulate why that factor is sufficiently atypical to justify a departure." *Id.* at 847; *see also Smith*, 27 F.3d at 655 ("For a departure on such a basis to be reasonable the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence.").

To the contrary, Leyva-Martinez's proposed grounds for a departure or variance in this case are very broad and general. He does not highlight any "additional facts concerning [his] individual circumstances to make [his] particular case atypical or unusual," *Lopez-Salas*, 266 F.3d at 848, let alone persuade the Court that by failing to seek a *Smith* variance

---

[1]In his argument about a departure or variance based on *Smith*, Leyva-Martinez refers to his motion and arguments as relating to "compassionate release" or a sentence reduction. The Court notes it separately denied (Filing No. 146) Leyva-Martinez's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (Filing No. 141) on September 13, 2023. Those issues have no impact here.

or departure Igbokwe "was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. As the government points out, Igbokwe not only negotiated a binding sentencing range (240 to 300 months) that started below the bottom of Leyva-Martinez's advisory guidelines range (270 to 322 months) but, at sentencing, Igbokwe also used that range to argue for a sentence of 240 months based on Leyva-Martinez's individual circumstances, including his two children and his post-arrest cooperation. That requested sentence itself included a downward variance.

In these circumstances, the Court cannot say Igbokwe provided ineffective assistance of counsel by failing to seek a longshot request for a departure or variance based on Leyva-Martinez's status as deportable defendant. *See United States v. Sera*, 267 F.3d 872, 875 (8th Cir. 2001) ("Failure to move for a downward departure [based on the defendant's status as a deportable alien or his willingness to waive deportation] cannot be said to be outside the broad range of reasonable assistance in this case where counsel chose to pursue a successful alternate strategy at sentencing and § 2255 counsel has not even identified what factors related to [the defendant's] status might support such a departure."). At the very least, Igbokwe's representation of Leyva-Martinez at sentencing fell well "within the wide range of reasonable professional assistance." *Dunn v. Reeves*, 594 U.S. ___, ___, 141 S. Ct. 2405, 2407 (2021) (per curiam) (quoting *Burt v. Titlow*, 571 U.S. 12, 23, 134 S. Ct. 10, 187 L.Ed.2d 348 (2013)); *see also Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.").

Because Leyva-Martinez "has not shown that his counsel's performance was deficient or that it prejudiced him," his § 2255 motion must be denied. *Sera*, 267 F.3d at 875.

C. **No Certificate of Appealability**

Leyva-Martinez cannot appeal this Court's decision to deny his § 2255 motion without a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B); Fed. R. App.

11

P. 22(b)(1). The Court cannot issue such a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Leyva-Martinez has not made that showing, no certificate of appealability will issue in this case.

In light of the foregoing,

IT IS ORDERED:

1. Defendant Jose Leyva-Martinez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 147) is denied.
2. No certificate of appealability will issue.
3. A separate judgment will be entered.
4. The Clerk of Court is directed to mail a copy of this Memorandum and Order and the Judgment to Leyva-Martinez at his address of record.

Dated this 9th day of February 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge